MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vic*e to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KARL ENGUERRA, JOSEF KNEPPERS, CARLOS BERNARD, et al. )<br><br>Plaintiffs )<br><br>vs. )<br><br>AUDI AG and AUDI OF AMERICA, LLC, )<br><br>Defendants. ) | CASE NO. _____<br><br>**COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1.      The Plaintiffs (identified below in paragraphs 10 - 105 infra) bring this Complaint

(the "Complaint") against Defendants Audi AG and Audi of America, LLC ("Defendants" or

"Audi") seeking damages and other relief for Audi's installation of illegal defeat devices on their

vehicles.  Audi installed these "defeat devices" to skirt governmental emissions regulations by fooling the consumers and regulators into believing that the vehicles emitted far less carbon dioxide gas ("$CO_2$") than they emit in real-world driving conditions.

2.     When Plaintiffs purchased or leased their vehicles, they did not know that the vehicles had illegal defeat devices.  Audi designed these defeat devices to clandestinely reduce carbon dioxide emissions and to increase fuel efficiency when the vehicles are being tested for emissions and fuel efficiency.  But when the vehicles are being driven on the road, they emit significantly more $CO_2$ than Audi advertised and more than is allowed by law.

3.     The vehicles containing the illegal $CO_2$ defeat devices include at least those vehicles Audi equipped with (a) a ZF 8HP55 "AL 551" transmission, including, but not limited to, the A6, A7, A8, Q5, and Q7 models and (b) a DL 501-7Q "DL 501" transmission, including, but not limited to, the Audi S4, S5, S6, S7, and S8 models (collectively the "Fraudulent Vehicles").

4.     Audi sold or leased the Fraudulent Vehicles to Plaintiffs by falsely representing that they complied with relevant emissions standards when in normal use.  And Audi concealed—and failed to inform—Plaintiffs that Audi had installed illegal emissions defeat devices on their vehicles.  Audi also falsely represented the fuel efficiency of the Fraudulent Vehicles.

5.     Plaintiffs have sustained damages due to Audi's conduct in secretly installing defeat devices on their vehicles.  If Plaintiffs had known about the defeat devices, they would not have purchased or leased the Fraudulent Vehicles at all.  Or, if Audi had disclosed the existence of the defeat devices and taken the necessary mitigation efforts to make the Fraudulent Vehicles legal to sell, Plaintiffs would have paid significantly less for them.  Plaintiffs overpaid for their

vehicles (which do not provide the performance, fuel efficiency, and cleanliness that Audi advertised) and the value of their vehicles has diminished now that the existence of the defeat devices has been uncovered.

## JURISDICTION AND VENUE

6.     Pursuant to 28 U.S.C. § 1332(d)(11), this Court has jurisdiction over this case because it is a mass action under the Class Action Fairness Act ("CAFA").  This Court has subject matter jurisdiction over this case under CAFA because:  (1) this is a civil action in which the monetary claims of more than 100 plaintiffs are proposed to be tried jointly (2) the Plaintiffs' claims involve common questions of law or fact; (3) the total amount in controversy exceeds $5 million, exclusive of interest and costs; (4) each plaintiff in this lawsuit is seeking more than $75,000, exclusive of interest and costs; and (5) there is minimal diversity because at least one of the plaintiffs is a citizen of a different state than one of the defendants.

7.     Pursuant to 28 U.S.C. § 1331, this Court has also has jurisdiction over this case because each of the Plaintiffs has asserted a claim under the Magnuson - Moss Act seeking damages in excess of $50,000 exclusive of interest and costs (15 U.S.C. §§ 2301, et seq.). Therefore, Plaintiffs' claims arise under the laws of the United States.

8.     The Court has subject matter jurisdiction over this case for the reasons discussed above (*see* discussion *supra*).  This Court also has personal jurisdiction over the Defendants because, at all relevant times, they designed, manufactured, sold, distributed, promoted and placed into the stream of commerce in California numerous Audi automobiles, including the automobiles at issue in this case.  In addition, the fraudulent statements, breaches of contract, and breaches of warranty at issue in this case occurred, in part, in this District.  In addition, the claims at issue in this this case arise, in part, from Audi's contacts with California.  The

Defendants also conduct business in California and the causes of action asserted herein arose from and are connected to purposeful acts taken by Defendants in California. Audi's contacts with California were continuous and systematic.

9.      Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Audi has conducted extensive business in this District, including, without limitation, marketing, advertising, selling, and leasing the Fraudulent Vehicles in this district. The Plaintiffs listed in paragraphs 10-105 below reside in this district and purchased their Fraudulent Vehicles in this District.

## PARTIES

### Plaintiffs

### California Plaintiffs
**Northern District of California Plaintiffs**

10.     Plaintiff Karl Enguerra is a citizen of California residing in Santa Clara County, California. Mr. Enguerra purchased a 2012 Audi A6 from Stevens Creek Audi in San Jose, Santa Clara, County, California.

11.     Plaintiff Josef Kneppers is a citizen of California residing in Walnut Creek, Contra Costa County, California. Mr. Kneppers purchased a 2012 Audi A7 from Concord Audi in Concord, Contra Costa County, California.

**Other California Plaintiffs**

12.     Plaintiff Carlos Bernard is a citizen of California residing in Los Angeles County, California. Mr. Bernard purchased a 2012 Audi Q7 from McKenna Audi in Norwalk, Los Angeles County, California.

13.     Plaintiff Alicia Burruel is a citizen of California residing in Los Angeles County, California.  Ms. Burruel purchased a 2012 Audi S4 from Rusnak/ Pasadena Audi in Pasadena, Los Angeles County, California.

14.     Plaintiff Bradley Cutler is a citizen of California residing in Placer County, California.  Mr. Cutler purchased a 2012 Audi Q5 from Wiello Audi in Sacramento, Sacramento County, California.

15.     Plaintiff Feri Dehestani is a citizen of California residing in Orange County, California.  Mr. Dehestani purchased a 2014 Audi A8 from United Sales in Laguna Hills, Orange County, California.

16.     Plaintiff Ralph Figueiredo is a citizen of California residing in Los Angeles County, California.  Mr. Figueiredo purchased a 2013 Audi A6 from Woodland Hills Audi Gallery in Woodland Hills, Los Angeles County, California.

17.     Plaintiff Brent Gong is a citizen of California residing in Los Angeles County, California.  Mr. Gong leased a 2017 Audi Q7 from Woodland Hills Audi Gallery in Woodland Hills, Los Angeles County, California.

18.     Plaintiff Mary Anne Hall is a citizen of California residing in Los Angeles County, California.  Ms. Hall leased a 2016 Audi Q5 from Audi Pacific in Torrance, Los Angeles County, California.

19.     Plaintiff Don Handel is a citizen of California residing in Riverside County, California.  Mr. Handel purchased a 2013 Audi A6 from Desert European Motorcars in Rancho Mirage, Riverside County, California.

20.     Plaintiff Rajvinder Kaur is a citizen of California residing in Los Angeles County, California.  Mr. Kaur purchased a 2013 Audi S4 from Woodland Hills Audi Gallery in Woodland Hills, Los Angeles County, California.

21.     Plaintiff Edmund Lee is a citizen of California residing in Los Angeles County, California.  Mr. Lee purchased a 2013 Audi S4 from Rusnak/ Pasadena Audi in Pasadena, Los Angeles County, California.

22.     Plaintiff David Leibovitch is a citizen of California residing in Los Angeles County, California.  Mr. Leibovitch leased a 2014 Audi Q7 from Rusnak/ Pasadena Audi in Pasadena, Los Angeles County, California.

## Alabama Plaintiffs

23.      Plaintiffs Donna Barker and Alen Barker are citizens of Alabama residing in Baldwin County, Alabama.  Mr. and Mrs. Barker purchased a 2014 Audi A6 from Dean McCrary in Mobile, Mobile County, Alabama.

24.     Plaintiff Amanda D'Angelo is a citizen of Mississippi residing in Harrison, County, Mississippi.  Ms. D'Angelo purchased a 2013 Audi Q7 from Audi of Birmingham in Irondale, Jefferson County, Alabama.

## Alaska Plaintiffs

25.      Plaintiff Kent Charles is a citizen of Alaska residing in Anchorage County, Alaska.  Mr. Charles purchased a 2012 Audi S5 from Morrison Auto Group in Anchorage, Anchorage County, Alaska.

26.     Plaintiff Kenneth Yockey is a citizen of Alaska residing in Anchorage County, Alaska.  Mr. Yockey purchased a 2012 Audi A8 from Audi Anchorage in Anchorage, Anchorage County, Alaska.

**Arizona Plaintiffs**

27.     Plaintiffs Michael Castro and Catherine Castro are citizens of New Mexico residing in Bernalillo County, New Mexico.  Mr. and Mrs. Castro purchased a 2013 Audi Q7 and a 2012 Audi A7 from Audi North Scottsdale in Phoenix, Maricopa County, Arizona.

28.     Plaintiff Sukhjit Ghuman is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Ghuman leased a 2016 Audi Q5 from Audi North Scottsdale in Phoenix, Maricopa County, Arizona.

29.     Plaintiff Michael Gilburd is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Gilburd purchased a 2014 Audi A8 from Audi North Scottsdale in Phoenix, Maricopa County, Arizona.

**Colorado Plaintiffs**

30.     Plaintiff Antony Sean Cherry is a citizen of Colorado residing in Larimer County, Colorado.  Mr. Cherry purchased a 2014 Audi S4 from Audi Boulder in Boulder, Boulder County, Colorado.

31.     Plaintiff Gregg Martinez and Steven Martinez are citizens of Minnesota residing in Scott County, Minnesota. Mr. and Mr. Martinez purchased a 2015 Audi A8L from Prestige Imports in Lakewood, Jefferson County, Colorado.

32.     Plaintiff Reed Nelson is a citizen of Colorado residing in Larimer County, Colorado.  Mr. Nelson leased a 2015 Audi S4 from Ed Carrol Audi in Fort Collins, Larimer County, Colorado.

33.     Plaintiff Robert Wilder is a citizen of Wyoming residing in Carbon County, Wyoming.  Mr. Wilder purchased a 2012 Audi Q5 from Ed Carrol Audi in Fort Collins, Larimer County, Colorado.

**Connecticut Plaintiffs**

34.     Plaintiff Leo Blais is a citizen of Rhode Island residing in Kent County, Rhode Island.  Mr. Blais purchased a 2013 Audi A8 from Valenti Motors, Inc. in Watertown, Litchfield County, Connecticut.

35.     Plaintiff Andrew Messina is a citizen of Connecticut residing in Fairfield County, Connecticut.  Mr. Messina purchased a 2012 Audi A7 from New Country Audi in Greenwich, Fairfield County, Connecticut.

36.     Plaintiff Doren Perruccio is a citizen of Connecticut residing in Middlesex County, Connecticut.  Mr. Perruccio purchased a 2015 Audi A6 from Euro Performance Cars, Inc. in Wallingford, New Haven County, Connecticut.

37.     Plaintiff Howard Weisman is a citizen of Connecticut residing in Fairfield County, Connecticut.  Mr. Weisman purchased a 2013 Audi Q5 from New Country Audi in Greenwich, Fairfield County, Connecticut.

**Florida Plaintiffs**

38.     Plaintiff Andrew Barnett is a citizen of Florida residing in Broward County, Florida.  Mr. Barnett leased a 2016 Audi S7 from Audi of Coral Springs in Coral Springs, Broward County, Florida.

39.     Plaintiff Thomas Chandler is a citizen of Florida residing in Pinellas County, Florida.  Mr. Chandler purchased a 2014 Audi Q7 from Crown Audi in Clearwater, Pinellas County, Florida.

40.     Plaintiffs Dave Chester and Rita Chester are citizens of Florida residing in Collier County, Florida.  Mr. and Mrs. Chester leased a 2015 Audi S5 from Prestige Audi of Miami in Miami, Miami-Dade County, Florida.

41.     Plaintiff Pamela Deane is a citizen of Florida residing in Osceola County, Florida. Ms. Deane purchased a 2012 Audi A6 from Audi North Orlando in Sanford, Seminole County, Florida.

42.     Plaintiff Joseph Genova is a citizen of Florida residing in Sarasota County, Florida.  Mr. Genova purchased a 2013 Audi S5 from Audi North Orlando in Sanford, Seminole County, Florida.

43.     Plaintiff Seymour Kantor is a citizen of Florida residing in Miami-Dade County, Florida.  Mr. Kantor purchased a 2014 Audi A7 from Audi of Coral Springs in Coral Springs, Broward County, Florida.

44.     Plaintiff Jill Kantor is a citizen of Florida residing in Miami-Dade County, Florida.  Mrs. Kantor purchased a 2013 Audi Q5 from Prestige Audi of Miami in Miami, Miami-Dade County, Florida.

45.     Plaintiffs Wajiha Karim and Mujtaba Karim are citizens of Florida residing in Orange County, Florida.  Mr. and Mrs. Karim purchased a 2017 Audi Q7 from Audi South Orlando in Orlando, Orange County, Florida.

46.     Plaintiff David Linginski is a citizen of Florida residing in Pasco County, Florida. Mr. Linginski purchased a 2013 Audi Q5 from Audi Clearwater in Clearwater, Pinellas County, Florida.

47.     Plaintiffs Latarsha Mapp and Lenice Graham are citizens of Florida residing in Miami-Dade County, Florida.  Ms. Mapp and Ms. Graham purchased a 2012 Audi A6 from Miami Car Credit in Miami, Miami-Dade County, Florida.

48.     Plaintiff Lizet Podetti is a citizen of Florida residing in Miami-Dade County, Florida.  Ms. Podetti purchased a 2013 Audi S4 from Doral Lincoln in Doral, Miami-Dade County, Florida.

49.     Plaintiff Alexander Schrager is a citizen of Florida residing in Palm Beach County, Florida.  Mr. Schrager leased a 2014 Audi S4 from Audi of Coral Springs in Coral Springs, Broward County, Florida.

50.     Plaintiff Jaime Valencia is a citizen of Florida residing in Miami-Dade County, Florida.  Mr. Valencia leased a 2013 Audi A7 from The Collection LLC in Coral Gables, Miami-Dade County, Florida.

51.     Plaintiffs Patricia Vega and Javier Vega are citizens of Florida residing in Seminole County, Florida.  Mr. and Mrs. Vega purchased a 2012 Audi A6 and leased a 2015 S5 from Audi Melbourne, Brevard County, Florida.

52.     Plaintiff Emmanuel Vestas is a citizen of Florida residing in Pasco County, Florida.  Mr. Vestas purchased a 2015 Audi Q7 from Crown Audi Clearwater in Clearwater, Pinellas County, Florida.

53.     Plaintiff Matthew Wallace is a citizen of Florida residing in Brevard County, Florida.  Mr. Wallace purchased a 2016 Audi Q5 from Stuart Audi in Stuart, Martin County, Florida.

54.     Plaintiff Pam West is a citizen of Florida residing in Brevard County, Florida.  Mrs. West purchased a 2013 Audi A6 from Audi North Orlando in Sandford, Seminole County, Florida.

**Georgia Plaintiffs**

55.     Plaintiff Debra L. Alexander is a citizen of North Carolina residing in Mecklenburg County, North Carolina.  Ms. Alexander purchased a 2014 Audi A7 from Audi North Alanta in Rosswell, Fulton County, Georgia.

56.     Plaintiffs Joseph Calderone and Frances Calderone are citizens of Florida residing in Duval County, Florida.  Mr. and Mrs. Calderone purchased a 2012 Audi S5 from Audi Gwinnett in Duluth, Gwinnett County, Georgia.

57.     Plaintiff Robert Goldstein is a citizen of Georgia residing in DeKalb County, Georgia.  Mr. Goldstein purchased a 2014 Audi A8 from Jim Ellis Motors, Inc. in Marietta, Cobb County, Georgia.

58.     Plaintiff Michael James Potts is a citizen of Wisconsin residing in St. Croix County, Wisconsin.  Mr. Potts purchased a 2012 Audi A7 from Jim Ellis Audi in Atlanta, DeKalb County, Georgia.

**Illinois Plaintiffs**

59.     Plaintiff Wesley Breton is a citizen of Illinois residing in DuPage County, Illinois. Mr. Breton purchased a 2012 Audi A8 from Fletcher Jones Audi in Chicago, Cook County, Illinois.

60.     Plaintiffs Joseph Brooks and T.N. Donnelly & Co. are citizens of Illinois residing in Cook County, Illinois.  Mr. Brooks and T.N. Donnelly & Co. purchased a 2012 Audi A6 from International Imports LLC in Tinley Park, Cook County, Illinois.

61.     Plaintiff Fabio DeAndrade is a citizen of Missouri residing in Jackson County, Missouri.  Mr. DeAndrade purchased a 2013 Audi S8 from The Audi Exchange in Highland Park, Lake County, Illinois.

62.     Plaintiff Eric Feinberg is a citizen of Illinois residing in Cook County, Illinois. Mr. Feinberg leased a 2016 Audi A6 from McGrath Audi in Morton Grove, Cook County, Illinois.

63.     Plaintiff Adam Lew is a citizen of Illinois residing in Cook County, Illinois.  Mr. Lew purchased a 2012 Audi S4 and leased a 2015 Audi Q7 from The Audi Exchange in Highland Park, Lake County, Illinois.

64.     Plaintiff Timothy Stearns is a citizen of Illinois residing in Cook County, Illinois. Mr. Stearns purchased a 2016 Audi Q7 from Autobarn Limited in Evanston, Cook County, Illinois.

**Indiana Plaintiffs**

65.     Plaintiffs Sharon Bill and Michael Bill are citizens of Indiana residing in Hamilton County, Indiana.  Mr. and Mrs. Bill purchased a 2013 Audi A8 from Tom Wood Audi in Indianapolis, Marion County, Indiana.

**Louisiana Plaintiffs**

66.     Plaintiff Jennifer Guidry is a citizen of Louisiana residing in Lafourche Parish County, Louisiana.  Ms. Guidry purchased a 2015 Audi Q7 from Brian Harris Porshce-Audi in Baton Rouge, Baton Rouge County, Louisiana.

67.     Plaintiffs Karl Wulf and Maritza Wulf are citizens of Louisiana residing in Jefferson Parish County, Louisiana.  Mr. and Mrs. Wulf purchased a 2015 Audi A8 from New Orleans Audi in Metairie, Jefferson Parish County, Louisiana.

**Maryland Plaintiffs**

68.     Plaintiff Derek Kaplan is a citizen of Maryland residing in Howard County, Maryland.  Mr. Kaplan purchased a 2012 Audi A6 from Audi Silver Spring in Silver Spring, Montgomery County, Maryland.

69.     Plaintiff Kevin Stern is a citizen of Maryland residing in Baltimore County, Maryland.  Mr. Stern purchased a 2014 Audi S4 from Audi of Hunt Valley in Cockeysville, Baltimore County, Maryland.

70.     Plaintiff Dawn Simmons is a citizen of Virginia residing in New Kent County, Virginia.  Ms. Simmons purchased a 2013 Audi Q7 from Rockville Audi in Rockville, Montgomery County, Maryland.

**Massachusetts Plaintiffs**

71.     Plaintiff Christopher Crane is a citizen of Maine residing in York County, Maine. Mr. Crane purchased a 2014 Audi A7 from Audi of Peabody in Peabody, Essex County, Massachusetts.

72.     Plaintiffs Phillip Cross and Catherine Baptista are citizens of Massachusetts residing in Essex County, Massachusetts.  Mr. Cross and Ms. Baptista purchased a 2012 Audi A6 from Herb Chambers in Burlington, Middlesex County, Massachusetts.

73.     Plaintiff Joseph Demartino is a citizen of Massachusetts residing in Barnstable County, Massachusetts.  Mr. Demartino purchased a 2013 Audi Q5 from Tracey Audi/ Audi of Cape Cod in Hyannis, Barnstable County, Massachusetts.

74.     Plaintiff Alex Moheban is a citizen of Massachusetts residing in Middlesex County, Massachusetts.  Mr. Moheban purchased a 2015 Audi S4 from Audi Shrewsbury in Shrewsbury, Worcester County, Massachusetts.

75.     Plaintiffs Kathleen Pitoniak and Thomas Pitoniak are citizens of Massachusetts residing in Hampden County, Massachusetts.  Mr. and Mrs. Pitoniak purchased a 2016 Audi Q5 from Fathers & Sons in Springfield, Hampden County, Massachusetts.

76.     Plaintiff John Quackenbush is a citizen of Massachusetts residing in Norfolk County, Massachusetts.  Mr. Quackenbush purchased a 2014 Audi SQ5 from Audi Brookline in Brookline, Norfolk County, Massachusetts.

77.     Plaintiff Brent Rish is a citizen of Massachusetts residing in Worcester County, Massachusetts.  Mr. Rish purchased a 2013 Audi S4 from Audi Brookline in Brookline, Norfolk County, Massachusetts.

## Missouri Plaintiffs

78.     Plaintiffs Jerry Caruso and Rosalie Caruso are citizens of Missouri residing in St. Louis County, Missouri.  Mr. and Mrs. Caruso purchased a 2013 Audi Q5 from Parktown Imports, Inc. in Kirkwood, St. Louis County, Missouri.

79.     Plaintiffs Pam Portell and Ron Portell are citizens of Missouri residing in St. Louis County, Missouri.  Mr. and Mrs. Portell purchased a 2013 Audi Q7 from Frank Bmmarito Olds/ GMC/ Mazda in Ellisville, St. Louis County, Missouri.

## Mississippi Plaintiffs

80.     Plaintiff Peyton Lassiter is a citizen of Mississippi residing in Warren County, Mississippi.  Mr. Lassiter purchased a 2013 Audi S7 from Audi Jackson in Jackson, Hinds County, Mississippi.

**Nevada Plaintiffs**

81.     Plaintiff Kenneth Caldwell is a citizen of South Carolina residing in Beaufort County, South Carolina.  Mr. Caldwell purchased a 2013 Audi Q5 from Audi Las Vegas in Las Vegas, Clark County, Nevada.

**New Jersey Plaintiffs**

82.     Plaintiff Steve Borne is a citizen of New York residing in New York County, New York.  Mr. Borne purchased a 2013 Audi Q5 from Prestige Motors in Paramus, Bergen County, New Jersey.

83.     Plaintiff Arno Boyaciyan is a citizen of New Jersey residing in Middlesex County, New Jersey.  Mr. Boyaciyan purchased a 2012 Audi Q5 from Princeton Audi VW in Princeton, Mercer County, New Jersey.

84.     Plaintiff Peter Kowalchuk is a citizen of New Jersey residing in Essex County, New Jersey.  Mr. Kowalchuk purchased a 2013 Audi A6 from DCH Millburn Audi in Maplewood, Essex County, New Jersey.

85.     Plaintiff Luis Lopez is a citizen of New York residing in Westchester County, New York.  Mr. Lopez leased a 2015 Audi Q7 from Bell Audi in Edison, Middlesex County, New Jersey.

86.     Plaintiff Pritish Mehra is a citizen of New Jersey residing in Middlesex County, New Jersey.  Mr. Mehra purchased a 2013 Audi Q7 from Princeton Audi VW in Princeton, Mercer County, New Jersey.

87.     Plaintiff Ilan Shemtov is a citizen of New Jersey residing in Bergen County, New Jersey.  Mr. Shemtov purchased a 2014 Audi A7 from Jack Daniels Motors, Inc. in Fair Lawn, Bergen County, New Jersey.

88.     Plaintiff William Wallner is a citizen of New Jersey residing in Camden County, New Jersey.  Mr. Wallner purchased a 2013 Audi A6 from Holman Infiniti in Maple Shade Township, Burlington County, New Jersey.

### New York Plaintiffs

89.     Plaintiff Peter Benotti is a citizen of New York residing in Suffolk County, New York.  Mr. Benotti purchased a 2013 Audi S4 from Audi Southampton in Southampton, Suffolk County, New York.

90.     Plaintiff Avi Cohen is a citizen of New Jersey residing in Bergen County, New Jersey.  Mr. Cohen purchased a 2014 Audi Q7 from Palisades Audi in Nyack, Rockland County, New York.

91.     Plaintiff Gary Dell'Abate is a citizen of Connecticut residing in Fairfield County, Connecticut.  Mr. Dell'Abate leased a 2016 Audi Q5 from Legend Autorama LTD in Amityville, Suffolk County, New York.

92.     Plaintiff Brett Dunne is a citizen of New York residing in Nassau County, New York.  Mr. Dunne purchased a 2012 Audi A7 from Biener Audi in Great Neck, Nassau County, New York.

93.     Plaintiff Herb Graham is a citizen of New York residing in Suffolk County, New York.  Mr. Graham purchased a 2015 Audi Q7 from Audi of Huntington in Huntington, Suffolk County, New York.

94.     Plaintiff Brad Green is a citizen of New York residing in Nassau County, New York.  Mr. Green purchased a 2016 Audi A6 from Atlantic Audi in West Islip, Suffolk County, New York.

95.     Plaintiff Yvette Hinds is a citizen of New York residing in Bronx County, New York.  Ms. Hinds purchased a 2014 Audi Q5 from Toyota Manhattan in New York, New York County, New York.

96.     Plaintiff Kenneth Medard is a citizen of New York residing in Kings County, New York.  Mr. Medard leased a 2017 Audi Q7 from Audi Brooklyn in Brooklyn, Kings County, New York.

97.     Plaintiff Tim Miller is a citizen of New York residing in Putnam County, New York.  Mr. Miller purchased a 2014 Audi S5 from Mohegan Lake Motors, Inc. in Mohega Lake, Westchester County, New York.

98.     Plaintiff Ricardo Santos is a citizen of New York residing in Nassau County, New York.  Mr. Santos purchased a 2014 Audi Q5 from Audi Lynbrook in Lynbrook, Nassau County, New York.

99.     Plaintiff Martin Schwartz is a citizen of New York residing in Nassau County, New York.  Mr. Schwartz purchased a 2015 Audi A7 from Biener Audi in Great Neck, Nassau County, New York.

100.    Plaintiff Robert Slochover is a citizen of New York residing in Nassau County, New York.  Mr. Slochover purchased a 2012 Audi A6 from Audi of Manhattan in New York, New York County, New York.

101.    Plaintiff Kevin Vo is citizen of New Jersey residing in Morris County, New Jersey.  Mr. Vo purchased a 2013 Audi A6 from Atlantic Audi in West Islip, Suffolk County, New York.

**North Carolina Plaintiffs**

102.    Plaintiff Susan Carr Arney is a citizen of North Carolina residing in Gaston County, North Carolina.  Ms. Carr Arney purchased a 2014 Audi Q5 from Audi Northlake in Charlotte, Mecklenburg County, North Carolina.

103.    Plaintiff Ronald Friday is a citizen of South Carolina residing in Richland County, South Carolina.  Mr. Friday purchased a 2014 Audi Q7 from Flow Audi in Winston Salem, Davidson County, North Carolina.

104.    Plaintiff Richard Koch is a citizen of North Carolina residing in Wake County, North Carolina.  Mr. Koch purchased a 2012 Audi A6 from Flow Audi of Greensboro in Greensboro, Guilford County, North Carolina.

105.    Plaintiff Mark Magnarella and Alexandrea Magnarella are citizens of North Carolina residing in Wayne County, North Carolina.  Mr. and Mrs. Magnarella purchased a 2017 Audi Q7 from Audi Raleigh in Raleigh, Wake County, North Carolina.

**Defendants**

106.    Defendant Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Audi America is a citizen of Delaware and Virginia. See 28 U.S.C. § 1332(d)(10).  Audi America is a wholly owned United States subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles, in all 50 states.

107.    Defendant Audi AG ("Audi AG") is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly owned subsidiary of Volkswagen AG. Audi AG

directly controls and directs the actions of Audi of America, LLC. Audi AG designs, develops, manufacturers, and sells luxury automobiles.  According to Audi AG, the Audi Group sold more than 200,000 vehicles in the United States in 2015.

## **FACTUAL BACKGROUND**

108.    Audi and its parent company, Volkswagen AG, have a long and sordid history of using defeat devices to falsify emissions test results.  In September 2015, the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") issued notices of violation accusing Volkswagen and Audi of equipping their diesel vehicles with illegal defeat devices to fake passing emissions results on their "Clean Diesel" vehicles. Those defeat devices allowed Volkswagen and Audi's diesel vehicles to detect government testing conditions and limit nitrous oxide ("NOx") while being tested.  But, during normal driving conditions, the diesel engines emitted NOx well above the legal limits.  Volkswagen and Audi were forced to admit the existence of these defeat devices.  This led to litigation and a multi-billion dollar settlement—one of the largest in U.S. history.  Volkswagen and Audi's conduct also led to criminal prosecutions.  Volkswagen AG pled guild to three criminal felonies and paid a $2.8 billion criminal penalty (on top of substantial civil penalties).

109.    Unfortunately, Audi's use of illegal defeat devices was not limited to diesel vehicles.  In July 2016, CARB discovered that Audi had also secretly installed defeat devices on some of its gasoline vehicles to limit $CO_2$ during emissions testing.   Just like the defeat devices used to falsify NOx emissions on its diesel vehicles, Audi used defeat devices in the Fraudulent Vehicles' to evade U.S. emissions standards.

110.    Audi installed defeat devices in vehicles equipped with one of two automatic transmissions with the internal designations AL 551 and DL 501 through May 2016.  The AL

551 transmission is an eight-speed transmission that Audi sourced from transmission supplier ZF Friedrichshafen (a/k/a ZF).  Audi obtained The DL 501 transmission from Volkswagen.  Audi A6, A7, A8, Q5, Q7, S4, S5, S6, S7, and S8 gasoline models are equipped with the AL 551 and DL 501 transmissions that contain the defeat devices at issue in this lawsuit.

111.    Volkswagen and Audi knew that emissions and fuel consumption are critical factors that consumers use to decide what cars to purchase.  Audi told consumers that its vehicles used less fuel and emitted less $CO_2$ than the cars actually do in normal driving conditions.

112.    Audi hid its deception by programming its engines with different modes.  One of these modes—which Audi deceptively called the "warm-up" mode—used significantly less fuel and emitted much less $CO_2$, but also delivered significantly less power.  The "warm up" mode activates when the Fraudulent Vehicles are started.  While the "warm-up" function is on, the automatic transmission remains in a "switching program" that reduces the engine speed, consumes less fuel, and produces less $CO_2$.

113.    Audi's use of the "warm up" mode was not limited to start up.  Audi also used this mode to falsify emissions test results. Audi engineers determined that the only time the Fraudulent Vehicles would run continuously with no steering wheel input was during examination in a lab, on a test bed. The vehicles' transmission control modules ("TCM") therefore set "shift points" that allow the vehicles to detect those lab conditions and to produce compliant emission results under those conditions (known by Volkswagen as the "dyno calibration" mode).[1]   Under these static dynamometer lab conditions (a vehicle treadmill), the

---

[1] The defeat device software is part of the TCM.  The TCM is designed to establish shift logic by reacting to signals from sensors monitoring coolant temperature, exhaust  temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to implement the cheating  function. Audi engineers intentionally put the cheat software in the TCM unit to make the defeat device more difficult to detect.

defeat devices enable the Fraudulent Vehicles to operate in this low power mode.  This low power mode is also known as the "low $CO_2$" program.  It works by causing the Fraudulent Vehicles to shift gears early to artificially lower engine revs and emissions.

114.    During normal driving conditions, the transmission computer switches to "road calibration" mode.  In contrast to "low $CO_2$" mode, the "road calibration" mode gives full power to the driver, resulting in increased fuel consumption and greater $CO_2$ emissions.  The road calibration mode switches on when the driver turns the steering wheel 15 degrees.  That usually happens seconds after a car is started in normal driving conditions.

115.    Audi used the defeat devices to deceive governmental authorities and consumers about the Fraudulent Vehicles' true fuel consumption and $CO_2$ emissions.  A vehicle's advertised fuel economy (listed on its "Monroney Sticker") is determined by driving a vehicle over five standardized driving patterns (or drive cycles).  These driving patterns are tested in a laboratory on a dynamometer where the conditions for all tests can be controlled.  These driving cycles include cold starts, hot starts, highway driving, aggressive high-speed driving, and driving with the air conditioner in use.  The defeat device software is located in the TCM.  The engineers imbedded the cheat software in the TCM unit, to make it difficult to detect.

116.    The TCM is designed to establish shift logic by responding to signals from sensors monitoring coolant temperature, exhaust temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to cheat on emissions tests. Data from the five drive cycles are combined and adjusted for "real world" conditions in a way to represent "City" driving and "Highway" driving.  The "combined" fuel economy is the average of the City and Highway values with

weights of 55% and 45% respectively. These adjusted and combined values appear on the vehicle's Monroney sticker.

117.     The drive cycles are performed on a dynamometer in a lab while the Fraudulent Vehicles' "low $CO_2$" mode is activated.  During each cycle, pollutants are measured.  This includes un-combusted or partially combusted gasoline (hydrocarbons or HC), carbon monoxide (CO) and carbon dioxide ($CO_2$).  The amount of carbon produced is then converted to the amount of gasoline that was required to produce the carbon in the exhaust.  The amount of gasoline produced during the tests is divided into the distance driven on the test to produce the fuel economy.

118.     Mathematically, as the amount of $CO_2$ produced increases, a vehicle gasoline uses more gasoline and the fuel economy decreases. Therefore, if a Defective Vehicle produces less $CO_2$ during laboratory testing (while in "low $CO_2$" mode) but higher $CO_2$ when driven on the road, then the vehicle would have a higher estimated fuel economy rating on the Monroney sticker than the vehicle would actually have while being driven.

119.     This is how Audi's defeat devices worked in the Fraudulent Vehicles.  The defeat device program gives the Fraudulent Vehicles two modes. The "dyno calibration" mode lowers fuel supply and limits revolutions per minute ("rpms") per gear, which curtails fuel burn and lowers emissions.  The "low $CO_2$" or "dyno calibration" mode is activated during all of the laboratory testing used to calculate the Fraudulent Vehicles' supposed fuel economy.  On the other hand, the "road calibration" mode allows the engine to turn maximum rpms in each gear and furnishes the necessary—greatly increased—fuel supply required to deliver advertised torque and performance. The "road calibration" mode is active during all normal driving.

120.    Audi knew what it was doing.  In fact, it commissioned its own study, which found that a vehicles' fuel consumption on the road increased by 8.5 percent after the wheel was turned.  Audi executives knew how the defeat device worked, and instructed company employees to utilize it to deceive regulators and consumers.  Volkswagen and Audi management discussed the defeat device software in detail, for example, during a "Summer Drive" event in South Africa in the second half of February 2013. According to the event minutes, Axel Eiser, then the head of Audi's powertrain division (and currently the head of powertrain development of the entire Volkswagen group) asked: "When will we have the cycle optimized shift program?" He continued: "The shifting program shall be designed to be 100% active on the dyno, but only 0.01% in the hands of the customer."[2]   The meaning of Mr. Eiser's statement is crystal clear— Audi executives intentionally used the defeat device to deceive regulators and consumers by activating the "low $CO_2$" or "dyno calibration" mode in testing conditions.  This practice is highly deceptive and illegal.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

121.    Plaintiffs could not have discovered through reasonable diligence that their Fraudulent Vehicles were defective within the time period of any applicable statutes of limitation.  Plaintiffs did not know and could not have known until November 7, 2016, the time when published reports first revealed that the Fraudulent Vehicles are equipped with defeat devices.  Plaintiffs' claims did not accrue until they discovered that the defeat device caused the Fraudulent Vehicles to fail required emissions standards.

---

[2] Kayhan Oezgenc and Jan C. Wehmeyer, *This is How the Manufacturer Cheated on $CO_2$*, Bild am Sonntag (November 5, 2016) http://www.bild.de/bild-plus/auto/auto-news/audi/so-schummelte-der-hersteller-bei-co-48621300.bild.html

**Fraudulent Concealment Tolling**

122.    At all relevant times, Audi concealed the existence of the defeat devices from Plaintiffs and failed to disclose any information to Plaintiffs about the defeat devices on the Fraudulent Vehicles.  Audi deliberately hid the information that Plaintiffs needed to discover the existence of the defeat devices at an early time using reasonable diligence.  Despite knowing that its vehicles contained illegal defeat devices, Audi continued to manufacture, market, distribute, lease, and/or sell the Fraudulent Vehicles to Plaintiffs.  This conduct amounted to concealment and failure to notify Plaintiffs about any facts that would have alerted Plaintiffs to the existence of the defeat devices on the Fraudulent Vehicles.

123.    Plaintiffs justifiably relied on Audi to disclose these material defects in the Audi vehicles they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiffs.  All applicable statutes of limitation have been tolled and suspended with respect to Plaintiffs' claims arising from the existence of the defeat devices on the Fraudulent Vehicles by virtue of the fraudulent concealment doctrine.

**Estoppel**

124.    Audi was under a continuous duty to disclose to Plaintiffs the existence of the defeat devices.  The existence of the defeat devices has had a substantial, negative effect on the character, quality, performance, and nature of the Fraudulent Vehicles. Audi actively hid the true character, quality, performance, and nature of the defeat device in the Fraudulent Vehicles, and Plaintiffs reasonably relied upon Audi's knowing and active concealment of these facts.  Audi is accordingly estopped from relying on any statute of limitations in defense of this action.  For these same reasons, Audi is estopped from relying upon any warranty mileage and age limitations in defense of this action.

**CLAIMS FOR RELIEF**

**COUNTS COMMON TO ALL PLAINTIFFS**

**COMMON COUNT 1**
**VIOLATION OF MAGNUSON MOSS WARRANTY ACT,**
**(15 U.S.C. §§ 2301, *et seq.*)**
**(On Behalf of all Plaintiffs)**

125.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

126.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

127.     Defendants are "supplier[s]" and "warrantor[s]" within the meaning of 15 U.S.C. § 2301(4) and (5) because they regularly sell Audi vehicles accompanied by the written Limited Warranties.

128.     Plaintiffs are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased Fraudulent Vehicles for personal, family, or household purposes.

129.     The Fraudulent Vehicles are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

130.     The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  15 U.S.C. § 2310(d)(1)

131.      The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25.00 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

132.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

133.    Audi provided Plaintiffs with two express warranties:  (1) "bumper-to-bumper" limited express warranty coverage for a minimum of four years or 50,000 miles, whichever comes first, and which covers emission related repairs; and (2) a federal emissions warranty that covers the repair and replacement of all emission control and emission- related parts for two years or 24,000 miles (whichever comes first), and covers specified major emission control components, including catalytic converters, electronic emissions control unit or computer and on-board emissions diagnostic device or computer for 8 years or 80,000 miles (whichever comes first). These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).  The Fraudulent Vehicles' implied warranties are covered by 15 U.S.C. § 2301(7).

134.    The terms of the written warranties and implied warranties became part of the basis of the bargain between Plaintiffs when deciding to purchase a Defective Vehicle.

135.    Audi breached these written and implied warranties as described in detail above. Without limitation, the Fraudulent Vehicles share a common design defect in that they emit more carbon dioxide than: (a) is allowable under the applicable regulations, and (b) Audi represented were emitted to their customers, the public, and regulators.

136.    Plaintiffs have had sufficient direct dealings with either Audi or its agents (including Audi dealerships) to establish privity of contract between Audi, on the one hand, and Plaintiffs, on the other hand. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Audi and its dealers, and specifically, of Audi's implied warranties. The dealers were not intended to be the ultimate consumers of the Fraudulent Vehicles and have no rights under the warranty agreements provided with the

Fraudulent Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

137.    Affording Audi a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Audi knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Fraudulent Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.  Under the circumstances, the remedies available under any informal settlement procedures would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Audi a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

138.    As a direct and proximate result of Audi's breach of the written warranties and the implied warranty of merchantability, Plaintiffs have suffered damages in an amount to be determined at trial.

139.    Plaintiffs seek all damages permitted by law, including:  compensation for the monetary difference between the Fraudulent Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles; other incidental and consequential damages; statutory attorney fees; and all other relief allowed by law.

## COMMON COUNT 2
## FRAUD
### (On Behalf of all Plaintiffs)

140.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

141.    As alleged above, Defendants intentionally concealed and suppressed material facts concerning the illegality and quality of the Fraudulent Vehicles in order to defraud and mislead both regulators and Plaintiffs about the true nature of the Fraudulent Vehicles. Defendants accomplished their scheme by installing, aiding in the installation of, and/or failing to disclose the defeat devices in the Fraudulent Vehicles that caused the vehicles to operate in a low-emission test mode only during testing. During normal operation and use, the Fraudulent Vehicles emitted significantly larger quantities of carbon dioxide.  The result was precisely what Audi intended— the Fraudulent Vehicles were able to pass emission testing by way of deliberately induced false readings.  Defendants, thus, successfully imported, sold, and/or leased thousands of Fraudulent Vehicles to unwitting American consumers.

142.    Audi falsely represented that the Fraudulent Vehicles had functioning emissions systems that operated within legal limits during normal driving conditions.

143.    Audi's false representations and omissions were material to consumers, as they concerned the legality and marketing features of the Fraudulent Vehicles.

144.    Plaintiffs reasonably relied on Audi's deception, and Audi intended that they would so rely. Plaintiffs had no way of discerning that Defendants were, in fact, deceiving them because the defeat devices were sophisticated technology that could not be discerned by regulators, much less consumers.

145.    Audi's scheme to design and install defeat device software in the Fraudulent Vehicles for the specific purpose of circumventing U.S. law, and then concealing their fraudulent scheme, reveals a corporate culture that emphasized sales and profits over integrity and public health.

146.    Audi had a duty to disclose the defeat devices to regulators and the public.

147.    Audi hatched the deceptive scheme and knew that its customers, including Plaintiffs, did not know about, and could not reasonably discover, its scheme.

148.    Plaintiffs were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did had regulators or the driving public known the truth.

149.    As a direct and proximate result of Audi's fraudulent scheme, Plaintiffs sustained damages.  They own or lease Fraudulent Vehicles that are non-compliant and severely diminished in value as compared to the vehicles that were advertised or marketed. Moreover, the Fraudulent Vehicles either cannot be repaired to comply with applicable emissions standards, or if they can be made compliant, their performance, fuel efficiency, and longevity will be compromised.

150.    Audi is liable to Plaintiffs for damages in an amount to be proven at trial. Moreover, because Audi acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiffs for the purpose of enriching themselves to Plaintiffs' detriment; therefore, Audi's conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

### COMMON COUNT 3
### BREACH OF CONTRACT
### (On Behalf of all Plaintiffs)

151.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

152.    Every purchase or lease of a Defective Vehicle from an authorized dealer of Audi constitutes a contract between Audi and the purchaser or lessee. Audi materially breached these contracts by selling or leasing Plaintiffs defective, non-compliant Fraudulent Vehicles and by misrepresenting or failing to disclose the existence of the defeat device, rendering the Fraudulent Vehicles substantially less valuable than the vehicles that the Defendants advertised and promised to deliver to Plaintiffs.

153.    Audi's misrepresentations and omissions alleged herein caused Plaintiffs to enter into their agreements to purchase or lease their Fraudulent Vehicles. Absent those misrepresentations and omissions, Plaintiffs would not have purchased or leased their Fraudulent Vehicles and/or would not have purchased or leased their Fraudulent Vehicles at the prices they paid. Accordingly Plaintiffs overpaid for their Fraudulent Vehicles and did not receive the benefit of their bargain.

154.    Audi also breached their implied covenant of good faith and fair dealing under the laws of all 50 states and the District of Columbia.  By delivering a vehicle that contained defeat device software and thus exceeded, during normal use, federal and state emission limits, Audi violated Plaintiffs' fair and reasonable expectations under their respective contracts.  In addition, Audi's misrepresentations and omissions violated Audi's implied duty to deal honestly, and within reasonable commercial standards of fair dealing, with Plaintiffs.

155.    As a direct and proximate result of Audi's breach, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COMMON COUNT 4**
**UNJUST ENRICHMENT**
**(On Behalf of all Plaintiffs)**

156.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

157.    Audi benefitted from selling and leasing, at an unjust profit, Fraudulent Vehicles that had artificially inflated values due to Audi's concealment of the defeat devices, and Plaintiffs have overpaid for these vehicles.

158.    Audi received and retained unjust benefits from the Plaintiffs and inequity has resulted.

159.    It is inequitable and unconscionable for Audi to retain these benefits.

160.    Because Audi concealed their fraud and deception, Plaintiffs were not aware of the true facts concerning the Fraudulent Vehicles and did not benefit from Audi's misconduct.

161.    Audi knowingly accepted the unjust benefits of their fraudulent conduct.

162.    As a result of Audi's misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs in an amount to be proven at trial.

**<u>ALABAMA COUNTS</u>**

**ALABAMA COUNT 1:**
**VIOLATIONS OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(Ala. Code § 8-19-1, et seq.)**
**(On Behalf of the Alabama Plaintiffs)**

163.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

164.    Plaintiffs are "consumers" within the meaning of Ala. Code § 8-19-3(2).

165.    Plaintiffs and Audi are "persons" within the meaning of Ala. Code § 8-19-3(5).

166.    The Fraudulent Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

167.    Audi was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

168.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

169.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

170.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

171.   Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

172.   Audi knew or should have known that its conduct violated the Alabama DTPA.

173.   Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

174.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

175.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

176.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have

purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

177.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi unlawful acts and practices complained of herein affect the public interest.

178.    As a direct and proximate result of Audi's violations of the Alabama DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

179.    Pursuant to Ala. Code § 8-19-10, Plaintiffs seek monetary relief against Audi measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff.

180.    Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1, et seq.

181.    Audi failed to remedy its unlawful conduct within the requisite time period. Therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

**ALABAMA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**(Ala. Code §§ 7-2-313 and 7-2A-210)**
**(On Behalf of the Alabama Plaintiffs)**

182.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

183.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

184.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

185.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

186.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

187.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

188.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**ALABAMA COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ala. Code §§ 7-2-314 and 7-2A-212)**
**(On Behalf of the Alabama Plaintiffs)**

189.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

190.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

191.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

192.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

193.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

194.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

195.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**ALASKA COUNTS**

**ALASKA COUNT 1:**
**VIOLATIONS OF THE ALASKA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION ACT**
**(Alaska Stat. § 45550.471 *et. seq.*)**
**(On behalf of the Alaska Plaintiffs)**

196.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

197.    The Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of

1  trade or commerce unlawful, including: "(4) representing that goods or services have

2  sponsorship, approval, characteristics, ingredients, uses, benefits,. or quantities that they do not

3  have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

4  does not have;" "(6) representing that goods or services are of a particular standard, quality, or

5  grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising

6  goods or services with 'intent not to sell them as advertised;" or "(12) using or employing

7  deception, fraud, false pretense, false promise, misrepresentation or knowingly concealing,

8  suppressing, or omitting a material fact with intent that others rely upon the concealment,

9  suppression or omission in connection with the sale or advertisement of goods or services

10  whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

11       198.    In the course of its business, Audi concealed and suppressed material facts

12  concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat

13  device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission

14  test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles

15  would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi

16  intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false

17  readings. Plaintiffs had no way of discerning that Audi's representations were false and

18  misleading because Audi's defeat device software was extremely sophisticated technology.

19  Plaintiffs did not and could not unravel Audi's deception on their own.

20       199.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts

21  or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

22  fact with intent that others rely upon such concealment, suppression or omission, in connection

23  with the sale of Fraudulent Vehicles.

200.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

201.    Audi knew or should have known that its conduct violated the Alaska CPA CPA.

202.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

   a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

   b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

   c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

203.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

204.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

205.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

206.    As a direct and proximate result of Defendants' violations of the Alaska CPA,

207.    Plaintiffs have suffered injury-in-fact and/or actual damage.

208.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

209.    As a direct and proximate result of Defendants' violations of the Alaska CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

210.    Pursuant to Alaska Stat. § 45.50. 531, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff.

211.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. § 45.50.535, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

### ALASKA COUNT 2:
### BREACH OF THE IMPLIED.WARRANTY OF MERCHANTABILITY
### (Alaska Stat. §§ 4502.314 and 45.12.212)
### (On behalf of the Alaska Plaintiffs)

212.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

213.    The Defendants are and were at all relevant times "merchant[s]" under Alaska Stat. §§ 45.02.104(a) and·45.12.103(c)(l l); and are "seller[s]" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

214.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

215.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

216.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

217.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

218.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**ALASKA COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Alaska Stat. §§ 45.02.313 and 45.12.210)**
**(On behalf of the Alaska Plaintiffs)**

219.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

220.     The Defendants are and were at all relevant times "merchants" under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11); and "sellers" of motor vehicles under Alaska Stat. § 4502.103(a)(4).

221.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16). ·

222.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

223.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

224.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.  As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## ARIZONA COUNTS

### ARIZONA COUNT 1:
### VIOLATIONS OF THE CONSUMER FRAUD ACT
### (Ariz. Rev. Stat. § 44-1521, et seq.)
### (On Behalf of the Arizona Plaintiffs)

225.    The Arizona Plaintiff incorporate by reference each preceding paragraph as though fully set forth herein.

226.    Defendants and Plaintiffs are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

227.    The Fraudulent Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

228.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment,

suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

229.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

230.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

231.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

232.    Audi knew or should have known that its conduct violated the Arizona CFA.

233.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

234.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

235.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

236.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

237.   As a direct and proximate result of Defendants' violations of the Arizona CFA, Plaintiffs have suffered injury-in-fact and/or actual damage.

238.   Plaintiffs seek monetary relief against Audi in an amount to be determined at trial. Plaintiffs also seek punitive damages because Audi's engaged in aggravated and outrageous conduct with an evil mind.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

239.     Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**ARIZONA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**(Ariz. Rev. Stat. §§ 47-2313 and 47-2A210)**
**(On Behalf of the Arizona Plaintiffs)**

240.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

241.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

242.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

243.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

244.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

245.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

246.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### ARIZONA COUNT 3:
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ariz. Rev. Stat. §§ 47-2314 and 47-2A212)
### (On Behalf of the Arizona Plaintiffs)

247.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

248.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

249.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

250.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

251.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2a212.

252.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.

-45-

However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

253.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## CALIFORNIA COUNTS

### CALIFORNIA COUNT 1:
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT
### BREACH OF IMPLIED WARRANTY
### (Cal Civ. Code §§ 1790, et seq.)
### (On Behalf of the California Plaintiffs)

254.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

255.    Plaintiffs who purchased Fraudulent Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

256.    The Fraudulent Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

257.    Audi is the "manufacturer" of the Fraudulent Vehicles within the meaning of Cal. Civ. Code § 1791(j).

258.    Audi impliedly warranted to Plaintiffs that the Fraudulent Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Fraudulent Vehicles do not have the quality that a buyer would reasonably expect.

259.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

-46-

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)     Conform to the promises or affirmations of fact made on the container or label.

260.     The Fraudulent Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

261.     Fraudulent Vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

262.     In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above: (a) Audi knew about the defect; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the fact that the Fraudulent Vehicles were equipped with defeat devices from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

263.     Audi breached the implied warranty of merchantability by manufacturing and selling Fraudulent Vehicles that are defective.  Furthermore, this defect has caused Plaintiffs to

not receive the benefit of their bargain and have caused the Fraudulent Vehicles to depreciate in value.

264.   Plaintiffs have been damaged as a result of the diminished value of Audi's products.

265.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

266.   Under Cal. Civ. Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 2:**
**VIOLATION OF THE SONG-BEVERLY CONSUMER PROTECTION ACT,**
**BREACH OF EXPRESS WARRANTY**
**Cal Civ. Code §§ 1790, *et seq*.**
**(On Behalf of the California Plaintiffs)**

267.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

268.   Plaintiffs who purchased or leased the Fraudulent Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

269.   The Fraudulent Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

270.   Audi is a "manufacturer" of the Fraudulent Vehicles within the meaning of California Civil Code § 1791(j).

271.   Audi made express warranties to Plaintiffs within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

272.   As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit

-48-

emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

273.   As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

274.   Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

275.   Pursuant to California Civil Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 3:**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal Bus. & Prof. Code §§ 1750, *et seq.***
**(On Behalf of the California Plaintiffs)**

276.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

277.   Plaintiffs were deceived by Audi's failure to disclose that the Fraudulent Vehicles share a uniform defect in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent

Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

278.    Audi engaged in unfair or deceptive acts or practices when, in the course of its business it, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the Fraudulent Vehicles.

279.    In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above, (a) Audi knew about the defeat device equipped on the Fraudulent Vehicles; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the defeat device from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

280.    Audi intended for the Plaintiffs to rely on it to provide adequately designed, and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

281.    Audi intentionally failed or refused to disclose the defect to consumers.

282.    Audi's conduct and deceptive omissions were intended to induce Plaintiffs to believe that the Fraudulent Vehicles were adequately designed and adequately manufactured automobiles.

283.    Audi's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

284.   Plaintiffs have suffered injury in fact and actual damages resulting from Audi's material omissions because they paid inflated purchase prices for the Fraudulent Vehicles.

285.   Plaintiffs seek an order enjoining Audi's unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

286.   In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Audi with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Fraudulent Vehicles purchased by Plaintiffs, and demand that Audi corrects or agrees to correct the actions described therein within thirty (30) days of such notice.  If Audi fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs are entitled.

287.   Audi's conduct described herein is fraudulent, wanton, and malicious.

## COLORADO COUNTS

### COLORADO COUNT 1:
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(Col. Rev. Stat. § 6-1-101, et seq.)
(On Behalf of the Colorado Plaintiffs)

288.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

289.   Audi is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

290.   Plaintiffs are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Fraudulent Vehicles.

291.   The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Audi engaged in deceptive trade practices prohibited by the Colorado CPA, including:

(1) knowingly making a false representation as to the characteristics, uses, and benefits of the Fraudulent Vehicles that had the capacity or tendency to deceive the Plaintiffs; (2) representing that the Fraudulent Vehicles are of a particular standard, quality, and grade even though Audi knew or should have known they are not; (3) advertising the Fraudulent Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Fraudulent Vehicles that was known to Audi at the time of advertisement or sale with the intent to induce the Plaintiffs to purchase, lease or retain the Fraudulent Vehicles.

292.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

293.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

294.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

295.    Audi knew or should have known that its conduct violated the Colorado CPA.

296.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

297.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

298.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

299.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

300.    Plaintiffs risk irreparable injury as a result of Audi's act and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

301.    As a direct and proximate result of Audi's violations of the Colorado CPA,

Plaintiffs have suffered injury-in-fact and/or actual damage.

302.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff.

303.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### COLORADO COUNT 2:
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Col. Rev. Stat. §§ 4-2-313 and 4-2.5-212)
### (On Behalf of the Colorado Plaintiffs)

304.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

305.   Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

306.   With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

307.   The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

308.   A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. § § 4-2-313 and 4-2.5-212.

309.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

310.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COLORADO COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**
**(On Behalf of the Colorado Plaintiffs)**

311.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

312.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

313.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

314.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

315.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

316.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

317.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## CONNECTICUT COUNTS

### CONNECTICUT COUNT 1:
### VIOLATIONS OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT
### (Conn. Gen. Stat. § 42-110A, et seq.)
### (On Behalf of the Connecticut Plaintiffs)

318.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

319.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

320.    Audi is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3). Audi is in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

321.    Audi participated in deceptive trade practices that violated the Connecticut UTPA as described herein.

322.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission

test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

323.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

324.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

325.    Audi knew or should have known that its conduct violated the Connecticut UTPA.

326.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

327.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

328.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

329.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

330.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

331.    As a direct and proximate result of Defendants' violations of the Connecticut UTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

332.    Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

333.    Audi Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

**CONNECTICUT COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**(Conn. Gen. Stat. Ann. § 42A-2-313)**
**(On Behalf of the Connecticut Plaintiffs)**

334.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

335.    Audi is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

336.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

337.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

338.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**CONNECTICUT COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Conn. Gen. Stat. Ann. § 42A-2-314)**
**(On Behalf of the Connecticut Plaintiffs)**

339.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

340.    Audi is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

341.    A warranty that the Fraudulent Vehicles were in merchantable condition is implied by law in the instant transactions pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

342.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

343.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## FLORIDA COUNTS

### FLORIDA COUNT 1:
### VIOLATIONS OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### Fla. Stat. § 501.201, et seq.
### (On Behalf of the Florida Plaintiffs)

344.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

345.    Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

346.    Audi is and was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

347.     FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  Audi participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

348.     In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

349.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

350.     Audi engaged in misleading, false, unfair or deceptive acts or practices that violated the FUDTPA by designing, installing, failing to disclose and actively concealing the illegal defeat device, the vehicles illegality, and the true nature of the Fraudulent Vehicles.

351.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs, about illegality, emissions, and

efficiency of the Fraudulent Vehicles, the quality of the Audi brand, and the true value of the Fraudulent Vehicles.

352.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Audi misrepresentations and their concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased the vehicles at all, or alternatively, would have paid less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

353.    Audi had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the FUDTPA. All owners of Fraudulent Vehicles suffered ascertainable loss in the form of the purchase or lease price as well as the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices.

354.    Plaintiffs risk irreparable injury as a result of Defendants' acts and omissions in violation of the FUDTPA, and these violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

355.    As a direct and proximate result of Audi's violations of the FUDTPA, Plaintiffs has suffered injury-in-fact and/or actual damage.

356.    Plaintiffs are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

357.    Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**FLORIDA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**F.S.A. §§ 672.313 and 680.21**
**(On Behalf of the Florida Plaintiffs)**

358.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

359.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

360.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

361.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

362.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

363.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

364.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**FLORIDA COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(F.S.A. §§ 672.314 and 680.212)**
**(On Behalf of the Florida Plaintiffs)**

365.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

366.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

367.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

368.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

369.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to F.S.A. §§ 672.314 and 680.212.

370.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

371.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**GEORGIA COUNTS**

**GEORGIA COUNT 1**
**VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**Ga. Code Ann. § 10-1-390, et seq.**
**(On Behalf of the Georgia Plaintiffs)**

372.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

373.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

374.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

375.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

376.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles were material to Plaintiffs.

377.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs about the true nature of the Fraudulent Vehicles.

378.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Audi's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

379.    Audi had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Georgia FBPA. All owners of Fraudulent Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Audi's deceptive and unfair acts and practices made in the course of Audi's business.

380.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

381.    As a direct and proximate result of Defendants' violations of the Georgia FBPA,

Plaintiffs have suffered injury-in-fact and/or actual damage.

382.   Plaintiffs are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

383.   Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

384.   Audi failed to remedy its unlawful conduct within the requisite time period. Plaintiffs will seek all damages and relief to which they are entitled under the Georgia FBPA.

**GEORGIA COUNT 2**
**VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**Ga. Code Ann. § 10-1-370, et seq.**
**(On Behalf of the Georgia Plaintiffs)**

385.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

386.   Plaintiffs and Audi are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1- 371(5).

387.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

388.   In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended-

the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

389.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

390.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

391.    Audi knew or should have known that its conduct violated the Georgia UDTPA.

392.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.      intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.      made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

393.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

394.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

395.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

396.     As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

397.     Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

**GEORGIA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)**
**(On Behalf of the Georgia Plaintiffs)**

398.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

399.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

400.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

401.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

402.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

403.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

404.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## GEORGIA COUNT 4
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ga. Code. Ann. §§ 11-2-314 and 11-2A-212)
### (On Behalf of the Georgia Plaintiffs)

405.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

406.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

407.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

408.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

409.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

410.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

411.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## ILLINOIS COUNTS

### ILLINOIS COUNT 1
### VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1, et seq. and 720 ILCS 295/1a)
### (On Behalf of the Illinois Plaintiffs)

412.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

413.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

414.    Plaintiffs are "consumers" as that term is defined in 815 ILCS 505/1(e).

415.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

416.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

417.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

418.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

419.    Audi knew or should have known that its conduct violated the Illinois CFA.

420.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

421.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

422.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

423.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Audi's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

424.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

425.    As a direct and proximate result of Audi's violations of the Illinois CFA, Plaintiffs have suffered injury-in-fact and/or actual damage.

426.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Audi in the amount of actual damages, as well as punitive damages because Audi acted with fraud and/or malice and/or was grossly negligent.

427.     Plaintiffs also seek an order enjoining Audi's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

**ILLINOIS COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210)**
**(On Behalf of the Illinois Plaintiffs)**

428.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

429.     Audis is and was at all relevant times a "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

430.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

431.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

432.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

433.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

434.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**ILLINOIS COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)**
**(On Behalf of the Illinois Plaintiffs)**

435.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

436.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

437.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

438.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

439.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

440.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.

However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## INDIANA COUNTS

### INDIANA COUNT 1:
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3)
### (On Behalf of the Indiana Plaintiffs)

441.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

442.    Audi is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

443.    Plaintiffs' purchases of the Fraudulent Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

444.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive act," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a

deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

445.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

446.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

447.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

448.    Audi knew or should have known that its conduct violated the Indiana DCSA.

449.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.      intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.       made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

450.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

451.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

452.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

453.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

454.    As a direct and proximate result of Audi's violations of the Indiana DCSA, Plaintiffs have suffered injury-in-fact and/or actual damage.

455.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial

and (b) statutory damages in the amount of $500 for each Plaintiff, including treble damages up to $1,000 for Audi's willfully deceptive acts.

456.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of the Audi's conduct and Audi's high net worth.

457.    Audi failed to remedy its unlawful conduct within the requisite time period. Therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

**INDIANA COUNT 2:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ind. Code §§ 26-1-2-314 and 26-1-2.1-212)**
**(On Behalf of the Indiana Plaintiffs)**

458.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

459.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

460.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

461.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

462.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

463.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel

efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.

However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially

increased amount of noxious gasses.

464.    As a direct and proximate result of Audi's breach of the implied warranty of

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**INDIANA COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Ind. Code §§ 26-1-2-313 and 26-1-2.1-210)**
**(On Behalf of the Indiana Plaintiffs)**

465.    Plaintiffs re-allege and incorporate by reference all preceding allegations as

though fully set forth herein.

466.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles

under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under §

26-1-2-103(1)(d).

467.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor

vehicles under Ind. Code § 26-1-2.1-103(1)(p).

468.    The Fraudulent Vehicles are and were at all relevant times "goods" within the

meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

469.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in

that they are equipped with "defeat devices." These defeat devices are designed to secretly limit

emissions and increase fuel efficiency when the vehicles are being subject to regulatory

emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses. The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable

consumers.

470.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

471.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## LOUISIANA COUNTS

### LOUISIANA COUNT 1
### VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW
### (La. Rev. Stat. § 51:1401, et seq.)
### (On Behalf of the Louisiana Plaintiffs)

472.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

473.    Audi and Plaintiffs are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8).

474.    Plaintiffs are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

475.    Audi engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

476.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Audi participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

477.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission

test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

478.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

479.   Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

480.   Audi knew or should have known that its conduct violated the Louisiana CPL.

481.   Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

482.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

483.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

484.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

485.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

486.    As a direct and proximate result of Audi's violations of the Louisiana CPL, Plaintiffs have suffered injury-in-fact and/or actual damage.

487.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for Audi's knowing violations of the Louisiana CPL; an order enjoining Audi's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

**LOUISIANA COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/**
**WARRANTY AGAINST REDHIBITORY DEFECTS**
**(La. Civ. Code Art. 2520, 2524)**
**(On Behalf of the Louisiana Plaintiffs)**

488.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

489.    Audi is and was at all relevant times a merchant with respect to motor vehicles.

490.    A warranty that the Fraudulent Vehicles were in merchantable condition is implied by law in the instant transactions.

491.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**MARYLAND COUNTS**

**MARYLAND COUNT 1**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(Md. Code Com. Law § 13-101, et seq.)**
**(On Behalf of the Maryland Plaintiffs)**

492.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

493.    Audi and Plaintiffs are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

494.     The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Audi participated in misleading, false, or deceptive acts that violated the Maryland CPA.

495.     In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

496.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

497.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

498.     Audi knew or should have known that its conduct violated the Maryland CPA.

499.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

500.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

501.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

502.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

503.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

504.    As a direct and proximate result of Audi's violations of the Maryland CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

505.    Pursuant to Md. Code Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**MARYLAND COUNT 2**
**MARYLAND LEMON LAW**
**(Md. Code. Com. Law § 14-1501, et seq.)**
**(On Behalf of the Maryland Plaintiffs)**

506.    Plaintiffs own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall within the categories of vehicles manufactured, assembled, or distributed by Audi. These vehicles are not auto homes.

507.    Audi is and was a "manufacturer]" of the Fraudulent Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

508.    Plaintiffs are "consumers" within the meaning of Md. Code, Com. Law § 14-1501(b) because they: purchased the Fraudulent Vehicles, were transferred the Fraudulent Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

509.    The Fraudulent Vehicles did not conform to their "warranties" under Md. Code, Com. Law § 14-1501(g) during the warranty period because they emitted grossly larger quantities of noxious $CO_2$ gasses than warranted and contained a "defeat device" designed to circumvent state and federal emissions standards. These devices did in fact circumvent emissions standards and substantially impaired the use and market value of their motor vehicles.

510.    Audi had actual knowledge of the conformities during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the nonconformities continued to exist throughout this term, as they have not been fixed. Plaintiffs are excused from notifying Audi of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

511.    Audi has had a reasonable opportunity to cure the nonconformities during the warranty period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Md. Code, Com. Law § 14-1502.

512.    Plaintiffs demand a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code, Com. Law § 14- 1502(c). Once payment has been tendered, Plaintiffs will return their vehicles.

### MARYLAND COUNT 3
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Md. Code Com. Law §§ 2-314 and 2A-212)
### (On Behalf of the Maryland Plaintiffs)

513.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

514.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

515.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

516.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

517.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

518.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

519.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

520.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**MARYLAND COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**(Md. Code Com. Law §§ 2-313 and 2a-210)**
**(On Behalf of the Maryland Plaintiffs)**

521.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

522.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

523.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

524.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

525.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

526.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

527.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## MASSACHUSETTS COUNTS

### MASSACHUSETTS COUNT 1
### DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW
### (Mass. Gen. Laws Ch. 93a, § 1, et seq.)
### (On Behalf of the Massachusetts Plaintiffs)

528.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

529.    Audi and Plaintiffs are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

530.    Audi engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

531.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.  Audi participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

532.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles

would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

533.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

534.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

535.    Audi knew or should have known that its conduct violated the Massachusetts Act.

536.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

537.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

538.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

539.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Audi's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

540.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

541.    As a direct and proximate result of Audi's violations of the Massachusetts Act, Plaintiffs have suffered injury-in-fact and/or actual damage.

542.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs seek monetary relief against Audi measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff. Because Audi's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff, up to three times actual damages, but no less than two times actual damages.

543.    Plaintiffs also seek an order enjoining Audi's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

544.    Audi failed to remedy its unlawful conduct within the requisite time period. Therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

545.    As a result of Audi's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### MASSACHUSETTS COUNT 2
### MASSACHUSETTS LEMON LAW
### (Mass. Gen. Laws Ch. 90, § 7N1/2(1))
### (On Behalf of the Massachusetts Plaintiffs)

546.    Plaintiffs own or lease "motor vehicles" within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1), because these vehicles were constructed or designed for propulsion by power and were sold, leased, or replaced by Audi. These vehicles are not: (1) auto homes, (2) vehicles built primarily for off-read use, and (3) used primarily for business purposes.

547.    Audi is a "manufacturer" of the Fraudulent Vehicles within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1).

548.    Plaintiffs are "consumers" within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1) because they bought or leased the Fraudulent Vehicles or are otherwise entitled to the attendant terms of warranty.

549.    The Fraudulent Vehicles did not conform to their express and implied warranties because they were not cleaner vehicles and contained a "defeat device" designed to circumvent state and federal emissions standards. These devices did in fact circumvent emissions standards and substantially impaired the use, market value, and safety of their motor vehicles.

550.    Audi had actual knowledge of the nonconformities during the "term of protection" within the meaning of Mass. Gen. Laws Ch. 90, §§ 7N1/2(1)–7N1/2(2). But the non-conformities continued to exist throughout this term, as they have not been fixed. Plaintiffs are excused from notifying Audi of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

551.    Audi has had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

552.    For vehicles purchased, Plaintiffs demand a full refund of the contract price. For vehicles leased, Plaintiffs demand a full refund of all payments made under the lease agreement. Plaintiff exercise their "unqualified right" to reject an offer of replacement and will retain their vehicles until payment is tendered under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

**MASSACHUSETTS COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Mass. Gen. Laws c. 106 §§ 2-314 and 2A-212)**
**(On Behalf of the Massachusetts Plaintiffs)**

553.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

554.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1) (d).

555.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

556.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

557.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to M.G.L. c. 106 §§ 2-314 and 2A-212.

558.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel

efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

559.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## MASSACHUSETTS COUNT 4
## BREACH OF EXPRESS WARRANTY
### (Mass. Gen. Laws c. 106 §§ 2-313 and 2A-210)
### (On Behalf of the Massachusetts Plaintiffs)

560.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

561.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

562.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under M.G.L c. 106 § 2A-103(1)(p).

563.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

564.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

565.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## MISSOURI COUNTS

### MISSOURI COUNT 1
### VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, et seq.)
### (On Behalf of the Missouri Plaintiffs)

566.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

567.    Audi and Plaintiffs are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

568.    Audi engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

569.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise Mo. Rev. Stat. § 407.020.

570.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Audi accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the

Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

571.     Audi's failure to disclose the existence of the defeat device and the true $CO_2$ emissions and mileage of the Fraudulent Vehicles, amounts to misleading statements pursuant to 15 Mo. Code of State Reg. § 60-9.090.

572.     Because Audi knew or believed that its statements about its vehicles' $CO_2$ emissions and mileage were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Audi engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of State Reg. 60-9.100.

573.     Audi's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers. Such acts are unfair practices in violation of 15 Mo. Code of State Reg. 60-8.020.

574.     Audi knew or should have known that its conduct violated the Missouri MPA.

575.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.      intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.       made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

576.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

577.      Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

578.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use

579.     Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

580.     As a direct and proximate result of  Audi's violations of the Missouri MPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

581.     Audi is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Audi's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**MISSOURI COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Mo. Stat. §§ 400.2-314 and 400.2A-212)**
**(On Behalf of the Missouri Plaintiffs)**

582.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

583.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and a "seller" of motor vehicles under § 400.2-103(1)(d).

584.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

585.     Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

586.      A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

587.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

588.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**MISSOURI COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Mo. Stat. §§ 400.2-313 and 400.2A-210)**
**(On Behalf of the Missouri Plaintiffs)**

589.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

590.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and a "seller" of motor vehicles under § 400.2-103(1)(d).

591.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

592.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

593.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

594.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

595.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## MISSISSIPPI COUNTS

### MISSISSIPPI COUNT 1:
### VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT
(Miss. Code. Ann. § 75-24 et seq.)
(On behalf of the Mississippi Plaintiffs)

596.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

597.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or

deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5.

598.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

599.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

600.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

601.    Audi knew or should have known that its conduct violated the Mississippi CPA.

602.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

603.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

604.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

605.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

606.    As a direct and proximate result of Defendants' violations of the Mississippi CPA.

607.    Plaintiffs have suffered injury-in-fact and/or actual damage.

608.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

609.    As a direct and proximate result of Defendants' violations of the Mississippi CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

610.    Plaintiffs' seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

**MISSISSIPPI COUNT 2:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Miss. Code §§ 75-2-314 and 75-2A-212)**
**(On behalf of the Mississippi Plaintiffs)**

611.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

612.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75102-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

613.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Miss Code § 75-2A-103(1)(p).

614.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(l)(h).

615.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss Code §§ 75-2- 314 and 75-2A-212.

616.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel

efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.

However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially

increased amount of noxious gasses.

617.    As a direct and proximate result of Audi's breach of the implied warranty of

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**MISSISSIPPI COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Miss. Code §§ 75-2-313 and 75-2A-210)**
**(On behalf of the Mississippi Plaintiffs)**

618.    Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

619.    The Defendants are and were at all relevant times "merchants" with· respect to

motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-

103(1)(d).

620.    With respect to leases, the Defendants are and were at all relevant times "lessors"

of motor vehicles under Miss. Code §. 75-2A-103(l)(p).

621.    The Fraudulent Vehicles are and were at all relevant times "goods" within the

meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(i)(h).

622.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in

that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit

emissions and increase fuel efficiency when the vehicles are being subject to regulatory

emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable

consumers.

623.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

624.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## NEVADA COUNTS

### NEVADA COUNT 1
### VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (Nev. Rev. Stat. § 598.0903, et seq.)
### (On Behalf of the Nevada Plaintiffs)

625.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

626.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, et seq. prohibits deceptive trade practices.  NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9.  Advertises goods or services with intent not to sell or lease them as advertised"; or "15.  Knowingly makes any other false representation in a transaction."

627.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat

device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

628.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

629.   Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

630.   Audi knew or should have known that its conduct violated the Nevada DTPA CFA.

631.   Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

632.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

633.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

634.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

635.     As a direct and proximate result of Defendants' violations of the Nevada DTPA,

636.     Plaintiffs have suffered injury-in-fact and/or actual damage.

637.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

638.     As a direct and proximate result of Defendants' violations of the Nevada DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

639.     Accordingly, Plaintiffs seek their actual damages, punitive damages, an order enjoining Audi's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  NEV. REV. STAT. § 41.600.

## NEVADA COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.R.S. §§ 104.2314 and 104A.2212)
### (On Behalf of the Nevada Plaintiffs)

640.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

641.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

642.   With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

643.   The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

644.   A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.R.S. §§ 104.2314 and 104A.2212.

645.   The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

646.   As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**NEVADA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(N.R.S. §§ 104.2313 and 104A.2210)**
**(On Behalf of the Nevada Plaintiffs)**

647.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

648.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

649.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

650.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

651.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

652.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

653.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## NEW JERSEY COUNTS

### NEW JERSEY COUNT 1
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. §§ 56:8-1, et seq.)
### (On Behalf of the New Jersey Plaintiffs)

654.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

655.    Plaintiffs and Defendants are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

656.    Audi engaged in "sales" of "merchandise" within the meaning of N.J. Stat. § 56:8-1(c), (e). Audi's actions as set forth herein occurred in the conduct of trade or commerce.

657.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. § 56:8-2.

658.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and

misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

659.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

660.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

661.    Audi knew or should have known that its conduct violated the New Jersey CPA.

662.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

663.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

664.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

665.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material

information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

666.    As a direct and proximate result of Defendants' violations of the New Jersey CPA,

667.    Plaintiffs have suffered injury-in-fact and/or actual damage.

668.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the New Jersey CPA in the course of its business.

669.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

670.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

## NEW JERSEY COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J.S. 12A:2-314 and 2A-212)
### (On Behalf of the New Jersey Plaintiffs)

671.    Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

672.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2- 103(1)(d).

673.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

674.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

675.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314 and 2A-212.

676.     These Fraudulent Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

677.     Specifically, the Fraudulent Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain emissions functions inoperative; and the vehicle was not adequately designed, manufactured, and tested.

678.     Audi was provided notice of these issues by the investigations of the EPA and individual state regulators, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of Fraudulent Vehicle defects became public.

679.     As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**NEW JERSEY COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(N.J.S. 12A:2-313 and 2A-210)**
**(On Behalf of the New Jersey Plaintiffs)**

680.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

681.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2- 103(1)(d).

682.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

683.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

684.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

685.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products. As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## NEW YORK COUNTS

### NEW YORK COUNT 1
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. Gen. Bus. Law § 349)
### (On Behalf of the New York Plaintiffs)

686.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

687.    Plaintiffs and all Defendants are "persons" under N.Y.     Gen. Bus. Law §
349(h), the New York Deceptive Acts and Practices Act ("NY DAPA"). Defendants' actions as
set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

688.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of
any business, trade or commerce." N.Y. Gen. Bus. Law § 349.  Defendants' conduct, as set forth
herein, constitutes deceptive acts or practices under this section.

689.    In the course of its business, Audi concealed and suppressed material facts
concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat
device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission
test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles
would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi
intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false
readings. Plaintiffs had no way of discerning that Audi's representations were false and
misleading because Audi's defeat device software was extremely sophisticated technology.
Plaintiffs did not and could not unravel Audi's deception on their own.

690.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts
or practices, fraud, misrepresentations, or concealment, suppression or omission of any material
fact with intent that others rely upon such concealment, suppression or omission, in connection
with the sale of Fraudulent Vehicles.

691.    Audi intentionally and knowingly misrepresented material facts regarding the
Fraudulent Vehicles with intent to mislead Plaintiffs.

692.    Audi knew or should have known that its conduct violated the NY DAPA.

693.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

694.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

695.      Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

696.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

697.     As a direct and proximate result of Defendants' violations of the NY DAPA,

698.     Plaintiffs have suffered injury-in-fact and/or actual damage.

699.     Audi's violations of the NY DAPA present a continuing risk to Plaintiffs and to the general public. Audi's deceptive acts and practices affect the public interest.

700.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**NEW YORK COUNT 2**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. Gen. Bus. Law § 350)**
**(On Behalf of the New York Plaintiffs)**

701.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

702.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA")

703.    The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

704.    Audi caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Audi, or that through the exercise of reasonable care should have been known by Audi, to be untrue and misleading to Plaintiffs.

705.    Audi made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Fraudulent Vehicles, particularly concerning the illegality, efficacy and functioning of the emissions systems on vehicles.

706.    Specifically, Audi intentionally concealed and suppressed material facts concerning the legality and quality of the Fraudulent Vehicles in order to intentionally and grossly defraud and mislead the Plaintiffs concerning the true emissions produced by the engines in the Fraudulent Vehicles.

707.    The misrepresentations and omissions regarding set forth above were material and likely to deceive a reasonable consumer. Specifically, although Audi advertised the Fraudulent Vehicles as clean and environmentally-friendly, they in fact used a sophisticated defeat device that was undetectable to the ordinary consumer that made them non-compliant with EPA emission regulations.

708.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

709.    Audi's false advertising was likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs, about the illegality and true characteristics of the Fraudulent vehicles, the quality of the Audi brand and the true value of the Fraudulent Vehicles.

710.    Audi's violations of the NY FAA present a continuing risk to Plaintiffs and to the general public. Audi's deceptive acts and practices affect the public interest.

711.    The Fraudulent Vehicles do not perform as advertised and are not compliant with EPA regulations, making them far less valuable than advertised.

712.    Plaintiffs who purchased Fraudulent Vehicles either would not have purchased them at all or paid less but for Audi's false advertising in violation of the NY FAA. Plaintiffs

who leased Fraudulent Vehicles either would not have leased them at all, or at a lower rate but for Audi's false advertising in violation of the NY FAA.

713.    The Plaintiffs have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's false advertising in violation of the NY FAA, including but not limited to purchasing or leasing an illegal vehicle, diminished or complete lost value for the Fraudulent Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendant's violations of the NY FAA.

714.    Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500.  Because Audi's conduct was committed willingly and knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000.

715.    Plaintiffs also seek an order enjoining Audi's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

**NEW YORK COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law §§ 2-314 and 2A-212)**
**(On Behalf of the New York Plaintiffs)**

716.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

717.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

718.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

719.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

720.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2- 314 and 2A-212.

721.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

722.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**NEW YORK COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. Law §§ 2-313 and 2A-210)**
**(On Behalf of the New York Plaintiffs)**

723.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

724.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

725.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

726.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

727.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

728.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

729.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### NORTH CAROLINA COUNTS

**NORTH CAROLINA COUNT 1**
**VIOLATIONS OF THE NORTH CAROLINA UNFAIR**
**AND DECEPTIVE TRADE PRACTICES ACT**
**(N.C. Gen. Stat. §§ 75-1.1, et seq.)**
**(On Behalf of the North Carolina Plaintiffs)**

730.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

731.    Plaintiffs are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq. ("NCUDTPA").

732.     Audi's acts and practices complained of herein were performed in the course of Audi's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

733.     The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. Gen. Stat. § 75-16.

734.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

735.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

736.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

737.   Audi knew or should have known that its conduct violated the NCUDTPA.  Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

738.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

739.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

740.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

741.   As a direct and proximate result of Defendants' violations of the NCUDTPA,

742.   Plaintiffs have suffered injury-in-fact and/or actual damage.

743.   Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the North Carolina CPA in the course of its business.

744.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

745.     As a result of the foregoing wrongful conduct of Defendants, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

### NORTH CAROLINA COUNT 2
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C.G.S.A. §§ 25-2-314 and 252A-212)
### (On Behalf of the North Carolina Plaintiffs)

746.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

747.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

748.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

749.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).5.

750.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S.A. § 25-2-314 and N.C.G.S.A. § 25-2A-212.

751.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

752.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**NORTH CAROLINA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(N.C.G.S.A. §§ 25-2-313 and 252A-210)**
**(On Behalf of the North Carolina Plaintiffs)**

753.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

754.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

755.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

756.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

757.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

758.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

759.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request this Court:

A.    Award damages, including compensatory and exemplary damages, to Plaintiffs;

B.    Award Plaintiffs actual damages sustained;

C.    Award Plaintiffs such additional damages, over and above the amount of their actual damages, that are authorized and warranted by law, applicable;

D.    Grant restitution to Plaintiffs and require Defendants to disgorge inequitable gains;

E.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Fraudulent Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs with appropriate curative notice regarding the existence and cause of the defect;

F.    Award Plaintiffs punitive damages;

G.    Award Plaintiffs their reasonable attorneys' fees and reimbursement of all costs

for the prosecution of this action; and

H.    Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by

jury on all issues so triable.

DATED:  May 22, 2017

HEYGOOD, ORR & PEARSON

By: /s/ *Michael E. Heygood*
MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vice*
to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**